## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

**PERRY JACKSON**                                    **CIVIL ACTION**

**VERSUS**                                              **NO.  18-4929**

**JAMES LEBLANC**                                 **SECTION "G"(2)**

## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases.  Upon review of the entire record, I have determined that a federal evidentiary hearing is unnecessary.  See 28 U.S.C. § 2254(e)(2).[1]  For the following reasons, I recommend that the instant petition for habeas corpus relief be **DENIED and DISMISSED WITH PREJUDICE**.

## I.    FACTUAL BACKGROUND

The petitioner, Perry Jackson, is a convicted inmate currently incarcerated in the Elayn Hunt Correctional Center in St. Gabriel, Louisiana.[2]  On September 24, 2015, Jackson was charged by bill of information in Orleans Parish with failure to register as

---

[1]Under 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is a statutorily mandated determination.  Section 2254(e)(2) authorizes the district court to hold an evidentiary hearing only when the petitioner has shown either that the claim relies on a new, retroactive rule of constitutional law that was previously unavailable, 28 U.S.C. § 2254(e)(2)(A)(i), or the claim relies on a factual basis that could not have been previously discovered by exercise of due diligence, 28 U.S.C. § 2254(e)(2)(A)(ii); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner. 28 U.S.C. § 2254(e)(2)(B).

[2]Rec. Doc. No. 8.

a sex offender.[3]  The charge arose from Jackson's 1994 conviction in Orleans Parish Case

No. 371-460 for the forcible rape of "his common law wife."[4]  The following partial

history of Jackson's incarceration and conviction history from 1994 to 2001 provides

relevant background:

> On September 22, 1994, Petitioner was convicted and sentenced in Orleans
> Parish in criminal actions 371-460 and 371-184 to five (5) years incarceration.
> Petitioner was released from prison on December 14, 1996, and placed on good
> time parole supervision for thirty (30) months.  On January 17, 1997, Petitioner
> was arrested in Jefferson Parish, and his parole was revoked.  He served fifteen
> (15) months in prison and was released on April 18, 1998 to good time parole
> supervision to complete the remaining fifteen (15) months on his original
> sentence.
>
> Petitioner was arrested again on October 18, 1998 and charged with parole
> violation [and with possession of cocaine in Case No. 402-422].  He has
> apparently remained in custody from that time until now.  On November 23,
> 1999, Petitioner was sentenced in criminal action 402-422 to serve five (5) years
> at hard labor in the custody of the Department of Corrections.  He was granted
> credit for time served in custody, and his sentence was ordered to run
> concurrently with the sentence in criminal actions 371-460 and 371-184.  On
> January 18, 2000, Petitioner completed the sentences in criminal actions 371-460
> and 371-184.  He still remains in custody on the sentence imposed in criminal
> action 402-422.

Jackson v. Warden, Allen Correctional Center, Civ. Action 00-2542, Report and

Recommendation, Record Document No. 19, pp. 1-2 (W.D. La. Mar. 8, 2001), adopted,

Judgment, Rec. Doc. No. 23 (W.D. La. April 16, 2001).  Perry remained incarcerated for

the drug conviction in Case No. 402-422 in 2002.  Jackson v. Andrews, 31 F. App'x 833

(5th Cir. 2002).

---

[3]St. Rec. Vol. 1 of 2, Bill of Information, 9/24/15.

[4]Rec. Doc. No. 8, p. 14, ¶3; St. Rec. Vol. 1 of 2, Trial Court Ruling, p. 1, ¶1, 7/6/16.

The bill of information in this case alleges that Jackson was convicted in 2014 upon his guilty plea in Harris County, Texas, for failure to register as a sex offender based on the 1994 Louisiana conviction for forcible rape, and he served a three year sentence on that charge. <u>Jackson v. Stephens</u>, No. 14-2548, 2014 WL 4988198, at *1 (S.D. Tex. Oct. 6, 2014).  In that federal habeas case, Jackson established that he was charged in Harris County on June 18, 2012, and ultimately indicted by a grand jury on June 29, 2012 for failure to register, although he remained at large.[5]  He later was arrested in another county on unrelated drug charges on July 29, 2013.[6]

On January 31, 2014, he was transferred to Harris County and pleaded guilty to the failure to register charge on March 14, 2014.[7]  According to Jackson's pleadings in the Southern District of Texas case, his Harris County conviction resulted in the requirement that he register as a sex offender for life.[8]  These allegations are consistent with the information charged in the bill of information in the underlying Louisiana criminal case at issue in this habeas petition.

On October 28, 2015, Jackson withdrew his former plea of not guilty and pleaded guilty before the Orleans Parish Criminal District Court to the charge of failure to register

---

[5]Civ. Action 14-2548, Rec. Doc. Nos. 1, 2 (S.D. Tex.).

[6]Civ. Action 14-2548, Rec. Doc. Nos. 23-5, pp. 25-26 (S.D. Tex.).

[7]<u>Id.</u>

[8]Civ. Action 14-2548, Rec. Doc. Nos. 1, 2 (S.D. Tex.).

as a sex offender.[9]  At the same hearing, Jackson also pleaded guilty to the State's multiple offender bill charging him as a second felony offender based on his 1999 possession of cocaine conviction.[10]  The state trial court sentenced Jackson as a second felony offender to five years in prison at hard labor.[11]

Jackson's conviction and sentence became final 30 days later, on Monday, November 30, 2015,[12] when he did not seek reconsideration of the sentence or pursue a direct appeal.  Roberts v. Cockrell, 319 F.3d 690, 694-95 (5th Cir. 2003) (under federal habeas law, a conviction is final when the state defendant does not timely proceed to the next available step in the state appeal process); see Cousin v. Lensing, 310 F.3d 843, 845 (5th Cir. 2002) (petitioner's guilty pleas became final at the end of the period for filing a notice of appeal under La. Code Crim. P. art. 914[13])

---

[9]St. Rec. Vol. 1 of 2, Plea Minutes, 10/28/15; Waiver of Rights-Plea of Guilty, 10/27/15; St. Rec. Vol. 2 of 2, Plea Transcript, 10/28/15.

[10]St. Rec. Vol. 1 of 2, Plea Minutes, 10/28/15; Waiver of Rights-Plea of Guilty-Multiple Offender, 10/28/15; Multiple Bill, 10/28/15; St. Rec. Vol. 2 of 2, Plea Transcript, 10/28/15.

[11]St. Rec. Vol. 1 of 2, Plea Minutes, 10/28/15; St. Rec. Vol. 2 of 2, Plea Transcript, 10/28/15.

[12]The thirtieth day fell on Friday, November 27, 2015.  That day, however, was declared by Governor Bobby Jindal to be Acadian Day, a recognized state holiday when so declared.  La. Rev. Stat. § 1:55(B)(3); La. Exec. Proclamation No. 174 BJ 2015.  Therefore, Jackson's conviction and sentence became final the following business day, Monday, November 30, 2015. La. Code Crim. P. art. 13.

[13]The Cousin court recognized that failure to move timely for appeal under La. Code Crim. P. art. 914 renders the conviction and sentence final at the expiration of that period, citing State v. Counterman, 475 So.2d 336, 338 (La. 1985).  At the time of Cousin, La. Code Crim. P. art. 914 required a criminal defendant to move for leave to appeal within five (5) days of the order or judgment being appealed or of a ruling on a timely motion to reconsider a sentence. Article 914 was later amended by La. Acts 2003, No. 949, § 1 to provide thirty (30) days for filing of the notice of appeal.

On March 28, 2016, Jackson signed and submitted to the state trial court an application for post-conviction relief in which he asserted the following claims:[14] (1) He received ineffective assistance of counsel when counsel (a) failed to conduct adequate discovery and investigation into the prior conviction and the validity of any registration requirement imposed upon him or for which he was being prosecuted, (b) failed to inform him of who was accusing him of being a danger to the community, (c) failed to inform him of the details of the right to jury trial before advising him to plead guilty, (d) failed to provide him with a copy of or review with him the multiple bill before advising him to plead guilty, (e) committed perjury by signing the waiver of rights forms indicating that she fully advised petitioner of his rights before he pleaded guilty to the charge and the multiple bill, and (f) told petitioner that if he complained about her representation, she would assure that the plea deal was revoked. (2) The state trial court failed to advise him of the allegations and evidence against him in the multiple bill before accepting his guilty plea.

On July 6, 2016, the state trial court denied the application holding that Jackson failed to establish either requirement of <u>Strickland v. Washington</u>, 466 U.S. 668 (1984),

---

[14] St. Rec. Vol. 4 of 8, Application for Post-Conviction Relief, dated 6/25/08.

made applicable to counsel's performance during a guilty plea in <u>Hill v. Lockhardt</u>, 474 U.S. 52, 58 (1985).[15]

On October 14, 2016, the Louisiana Fourth Circuit denied Jackson's related writ application, finding no error in the state trial court's ruling.[16]  On April 27, 2018, the Louisiana Supreme Court denied Jackson's writ application finding his ineffective assistance of counsel claims meritless under <u>Strickland</u>, and that he failed to satisfy his burden of proof as to the remaining claims.[17]

## III.    FEDERAL HABEAS PETITION

On May 11, 2018, the clerk of this court filed Jackson's petition for federal habeas corpus relief in which he asserts the following grounds for relief:[18] (1) The denial of relief on his ineffective assistance of counsel claims by the state courts was contrary to <u>Strickland</u> because his counsel (a) failed to conduct adequate discovery and investigation into the prior conviction and the validity of any registration requirement imposed upon him or for which he was being prosecuted, (b) failed to inform him who was accusing him of being a danger to the community, (c) failed to inform him of the details of the right to jury trial before advising him to plead guilty, (d) failed to provide him with a

---

[15]St. Rec. Vol. 1 of 2, Trial Court Ruling, 7/6/16.

[16]St. Rec. Vol. 2 of 2, 4th Cir. Order, 2016-K-0832, 10/14/16.

[17]<u>State ex rel. Jackson v. State</u>, 242 So.3d 560 (La. 2018); St. Rec. Vol. 2 of 2, La. S. Ct. Order, 2016-KH-2037, 4/27/18; La. S. Ct. Writ Application, 16-KH-2037, 11/21/16 (dated 11/8/16).

[18]Rec. Doc. No. 8.

copy of or review with him the multiple bill before advising him to plead guilty, (e) committed perjury by signing the waiver of rights forms indicating that she fully advised petitioner of his rights before he pleaded guilty to the charge and the multiple bill, and (f) told petitioner that if he complained about her representation she would assure that the plea deal was revoked. (2) The state courts failed to recognize that his multiple offender adjudication was unconstitutional, because the state trial court failed to advise him of the allegations and evidence against him before accepting the plea of guilty to the multiple offender bill.

The State filed a response in opposition to Jackson's federal petition asserting that his ineffective assistance of counsel claim was meritless under Strickland, and his second claim is not cognizable on federal habeas review.[19]  In his reply to the State's opposition, Jackson alleges that he is entitled to assert his second claim that his due process rights were violated during the multiple offender hearing, and he reiterates his arguments related to ineffective assistance of counsel, noting that his counsel failed to recognize and argue at the plea hearing that the law in place in 1996 only required that he register for ten years, which expired in 2006 and could not form the basis of the prosecution.[20]

III.    GENERAL STANDARDS OF REVIEW

---

[19]Rec. Doc. No. 15.

[20]Rec. Doc. No. 16.

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254. The AEDPA went into effect on April 24, 1996[21] and applies to habeas petitions filed after that date. Flanagan v. Johnson, 154 F.3d 196, 198 (5th Cir. 1998) (citing Lindh v. Murphy, 521 U.S. 320 (1997)). The AEDPA therefore applies to Jackson's petition, which, for reasons discussed below, is deemed filed on May 8, 2018.[22] The threshold questions in habeas review under the amended statute are whether the petition is timely and whether petitioner's claims were adjudicated on the merits in state court; i.e., the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim. Nobles v. Johnson, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

The State concedes, and the record shows, that Jackson's petition is timely filed, review of his claims was exhausted and no claim is in procedural default. However,

---

[21]The AEDPA, which was signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law. United States v. Sherrod, 964 F.2d 1501, 1505 (5th Cir. 1992).

[22]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. Coleman v. Johnson, 184 F.3d 398, 401 (5th Cir. 1999), cert. denied, 529 U.S. 1057 (2000); Spotville v. Cain, 149 F.3d 374, 378 (5th Cir. 1998); Cooper v. Brookshire, 70 F.3d 377, 379 (5th Cir. 1995). The clerk of court filed Jackson's petition on May 11, 2018, when it was received. Jackson signed and dated the petition on May 8, 2018, which is the earliest date appearing in the record on which he could have submitted the pleadings to prison officials for mailing.

Jackson's petition must be denied and dismissed with prejudice because his claims are meritless.

IV.   <u>STANDARDS OF A MERITS REVIEW</u>[23]

28 U.S.C. §§ 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law and mixed questions of fact and law in federal habeas corpus proceedings.  <u>Nobles</u>, 127 F.3d at 419-20 (citing 28 U.S.C. § 2254(b) and (c)).

Determinations of questions of fact by the state court are "presumed to be correct . . . and we will give deference to the state court's decision unless it 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'"  <u>Hill v. Johnson</u>, 210 F.3d 481, 485 (5th Cir. 2000) (quoting 28 U.S.C. § 2254(d)(2)).   The amended statute also codifies the "presumption of correctness" that attaches to state court findings of fact and the "clear and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption.  28 U.S.C. § 2254(e)(1).

A state court's determination of questions of law and mixed questions of law and fact are reviewed under 28 U.S.C. § 2254(d)(1) and receive deference, unless the state

---

[23]Jackson repeatedly suggests that no state court "addressed" his due process challenge to the multiple offender proceeding.  However, the Louisiana Supreme Court denied relief "[a]s to his remaining claims..." for lack of proof.  <u>Jackson</u>, 242 So.3d at 560; St. Rec. Vol. 2 of 2, La. S. Ct. Order, 2016-KH-2037, 4/27/18.  A state court is not required to give written reasons for each claim it addresses for AEDPA standards to apply to the adjudication of a claim on the merits.  <u>Harrington v. Richter</u>, 562 U.S. 86, 101-02 (2011).

court's decision "'"was contrary to, or involved an unreasonable application of, clearly established [Supreme Court precedent.]'" Penry v. Johnson, 215 F.3d 504, 507 (5th Cir. 2000) (quoting Miller v. Johnson, 200 F.3d 274, 280-81 (5th Cir. 2000)), aff'd in part, rev'd in part on other grounds, 532 U.S. 782 (2001) (brackets in original); Hill, 210 F.3d at 485. The United States Supreme Court has clarified the Section 2254(d)(1) standard as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Williams v. Taylor, 529 U.S. 362, 412-13 (2000); Penry, 532 U.S. 782, 792-93 (2001) (citing Williams, 529 U.S. at 405-06, 407-08); Hill, 210 F.3d at 485. The "critical point" in determining the Supreme Court rule to be applied "is that relief is available under § 2254(d)(1)'s unreasonable-application clause if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no 'fairminded disagreement' on the question." White v. Woodall, 572 U.S. 415, 427 (2014) (citing Harrington v. Richter, 562 U.S. 86, 103 (2011); Knowles v. Mirzayance, 556 U.S. 111, 122 (2009)). "Thus, 'if a habeas court must extend a rationale before it can apply to the facts at hand,' then by definition the rationale was not 'clearly established at the time of

the state-court decision.'" <u>Id.</u> at 426 (quoting <u>Yarborough v. Alvarado</u>, 541 U.S. 652, 666 (2004)).

"'[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [a Supreme Court case] incorrectly.'" <u>Price v. Vincent</u>, 538 U.S. 634, 641 (2003) (quoting <u>Woodford v. Visciotti</u>, 537 U.S. 19, 24-25 (2002)) (citations omitted; brackets in original). Rather, under the "unreasonable application" standard, "the only question for a federal habeas court is whether the state court's determination is objectively unreasonable." <u>Neal v. Puckett</u>, 286 F.3d 230, 246 (5th Cir. 2002). The burden is on the petitioner to show that the state court applied the precedent to the facts of his case in an objectively unreasonable manner. <u>Price</u>, 538 U.S. at 641 (quoting <u>Woodford</u>, 537 U.S. at 24-25); <u>Wright v. Quarterman</u>, 470 F.3d 581, 585 (5th Cir. 2006).

V.    <u>EFFECTIVE ASSISTANCE OF COUNSEL (CLAIM ONE)</u>

Jackson alleges that he received ineffective assistance of counsel because his counsel (a) failed to conduct adequate discovery and investigation into the prior conviction and the validity of any registration requirement imposed upon him or for which he was being prosecuted; (b) failed to inform him who was accusing him of being a danger to the community; (c) failed to inform him of the details of the right to jury trial before advising him to plead guilty; (d) failed to provide him with a copy of or review with him the multiple bill before advising him to plead guilty; (e) committed perjury by

signing waiver of rights forms indicating that she fully advised petitioner of his rights before he pleaded guilty to the charge and the multiple bill; and (f) told him that if he complained about her representation she would assure that the plea deal was revoked. On post-conviction review, the state courts denied relief on these claims under Strickland.

Strickland applies to the performance of counsel when a defendant enters a guilty plea. Hill, 474 U.S. at 58. In Strickland, the Supreme Court established a two-part test for evaluating claims of ineffective assistance of counsel, requiring petitioner to prove both deficient performance and resulting prejudice. Strickland, 466 U.S. at 697. The Supreme Court first held that "the defendant must show that counsel's representation fell below an objective standard of reasonableness." Id. at 687-88; Hill, 474 U.S. at 57. Second, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694; United States v. Kimler, 167 F.3d 889, 893 (5th Cir. 1999). In the context of a guilty plea, "[i]n order to satisfy . . . [Strickland's] 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59.

In deciding ineffective assistance of counsel claims, this court need not address both prongs of the conjunctive Strickland standard, but may dispose of such a claim

based solely on a petitioner's failure to meet either prong of the test.  <u>Kimler</u>, 167 F.3d at 893.  A habeas corpus petitioner "need not show that 'counsel's deficient conduct more likely than not altered the outcome in the case.' . . . But it is not enough under <u>Strickland</u>, 'that the errors had some conceivable effect on the outcome of the proceeding.'" (citation omitted) <u>Motley v. Collins</u>, 18 F.3d 1223, 1226 (5th Cir. 1994) (quoting <u>Strickland</u>, 466 U.S. at 693); <u>Harrington</u>, 562 U.S. at 112 (<u>Strickland</u> requires a "substantial" likelihood of a different result, not just "conceivable" one.)

On habeas review, the United States Supreme Court has recently clarified that, under <u>Strickland</u>, "[t]he question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom." <u>Harrington</u>, 562 U.S. at 105.  The <u>Harrington</u> Court went on to recognize the high level of deference owed to a state court's findings under <u>Strickland</u> in light of the AEDPA:

> The standards created by <u>Strickland</u> and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is doubly so.  The <u>Strickland</u> standard is a general one, so the range of reasonable applications is substantial.  Federal habeas courts must guard against the danger of equating unreasonableness under <u>Strickland</u> with unreasonableness under § 2254(d).  When § 2254(d) applies, the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied <u>Strickland</u>'s deferential standard.

<u>Harrington</u>, 562 U.S. at 105.

Thus, scrutiny of counsel's performance under § 2254(d) is "doubly deferential." Cullen v. Pinholster, 563 U.S. 170, 190 (2011) (quoting Knowles, 556 U.S. at 123). This court must therefore apply the "strong presumption" that counsel's strategy and defense tactics fall "within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 690.

Federal habeas courts presume that litigation strategy is objectively reasonable unless clearly proven otherwise by the petitioner. Id., 466 U.S. at 689; Geiger v. Cain, 540 F.3d 303, 309 (5th Cir. 2008); Moore v. Johnson, 194 F.3d 586, 591 (5th Cir. 1999). In assessing counsel's performance, a federal habeas court must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time of trial. Strickland, 466 U.S. at 689; Neal, 286 F.3d at 236-37; Clark v. Johnson, 227 F.3d 273, 282-83 (5th Cir. 2000), cert. denied, 531 U.S. 1167 (2001). Tactical decisions when supported by the circumstances are objectively reasonable and do not amount to unconstitutionally deficient performance. Lamb v. Johnson, 179 F.3d 352, 358 (5th Cir. 1999), cert. denied, 528 U.S. 1013 (1999) (citing Rector v. Johnson, 120 F.3d 551, 564 (5th Cir. 1997) and Mann v. Scott, 41 F.3d 968, 983-84 (5th Cir. 1994)).

The issue of ineffective assistance of counsel is a mixed question of law and fact. Clark v. Thaler, 673 F.3d 410, 416 (5th Cir. 2012); Woodfox v. Cain, 609 F.3d 774, 789

(5th Cir. 2010).  Thus, the question before this court is whether the state courts' denial

of relief was contrary to or an unreasonable application of United States Supreme Court.

A.    DISCOVERY AND INVESTIGATION

Broadly construed, Jackson's claims are that his counsel failed to conduct adequate

discovery and investigation to determine whether his prior conviction included a

requirement that he register as a sex offender and whether the registration requirements

forming the basis of the charge against him were valid.  He argues that further

investigation would have supported a motion to quash the charges and kept him from

pleading guilty.

"'A defendant who alleges a failure to investigate on the part of his counsel must

allege with specificity what the investigation would have revealed and how it would have

altered the outcome of the trial.'" (emphasis added, citation omitted) Moawad v.

Anderson, 143 F.3d 942, 948 (5th Cir. 1998); Druery v. Thaler, 647 F.3d 535, 541 (5th

Cir. 2011).  A petitioner cannot show prejudice as to a claim that his counsel failed to

investigate without adducing what the investigation would have shown.   Diaz v.

Quarterman, 239 F. App'x 886, 890 (5th Cir. 2007) (citing Strickland, 466 U.S. at 696,

recognizing that some evidence is required to show that "the decision reached would

reasonably likely have been different.").  To prevail on such a claim, petitioner must

provide factual support showing what exculpatory evidence further investigation would

have revealed.  Moawad, 143 F.3d at 948; Brown v. Dretke, 419 F.3d 365, 375 (5th Cir.

2005); Davis v. Cain, No. 07-6389, 2008 WL 5191912, at *10 (E.D. La. Dec. 11, 2008) (order adopting referenced Report and Recommendation).

Construed broadly, Jackson's claim is that investigation by his counsel would have established that the registration requirement was not part of his original sentence in 1994 and any registration period would have expired within 10 years, in 2006, long before the charges were brought against him in 2015. He asserts that, had his counsel diligently pursued discovery and investigation, she could have filed a motion to quash the charges.

Louisiana's sex offender registration laws were first enacted by Acts 1992, No. 388, § 1 (eff. June 18, 1992) and in relevant part required that "[a]ny adult residing in this state who has plead guilty or has been convicted of any sex offense shall register with the sheriff of the person's residence." State ex rel. Olivieri v. State, 779 So.2d 735, 738 (La. 2001); La. Rev. Stat. § 15:542(A) (1992). Because Jackson was convicted of forcible rape in 1994, the registration and notice requirements applied to his conviction, and his contrary argument is erroneous.

Furthermore, under Louisiana law, any subsequent change to the laws applied to Jackson retroactively without violation of any state or federal constitutional provisions. Id. at 742-744. At the time of his conviction, Louisiana law required him, as an adult convicted of a sex offense, to maintain his registration as a sex offender for 10 years following his initial registration, which was to occur upon his release from prison. La. Rev. Stat. § 15:544(A) (1992). As Jackson's exhibits demonstrate, the registration period

16

could not begin until "after release from his confinement or imprisonment," which was

in 1996.[24]  At that time, the statute specifically stated:

> If the person required to register is imprisoned or confined to a penal institution, full-time residential facility, hospital, or other facility or institution pursuant to the conviction, he shall comply with the registration provision for a period of ten years after release from his confinement or imprisonment.

La. Rev. Stat. § 15:544(A) (1992); see also, La. Rev. Stat. § 15:544(A) (1996) (amended

by Acts 1995, No. 928, §1 to include "and give notice" following "to register").

In Acts 2006, No. 24, § 1, approved May 12, 2006, this part of the statute was

clarified to state:

> If the person required to register and give notice is imprisoned or confined to a penal institution, full-time residential facility, hospital, or other facility or institution pursuant to a felony conviction, he shall comply with the registration and notice provisions for a period of ten years after release from his confinement or imprisonment.

La. Rev. Stat. § 15:544(A) (2006) (emphasis added).

Between 2007 and 2012, and before Jackson was charged in 2015, Louisiana law

was amended several times to require a sex offender to register for 15 years, and in some

cases for a lifetime, and the period of registration and notification was made to begin

---

[24]Rec. Doc. No. 16-1, pp. 1-2.

anew after each incarceration for any subsequent felony conviction.[25]  La. Rev. Stat. § 15:544(A), (D) (as periodically amended).

Jackson was convicted while the sex offender registration and notice laws were in place in Louisiana and he was subject to those requirements.  Based on the history of his many felony incarcerations and criminal proceedings in Louisiana and Texas outlined above, the record does not support a conclusion that Jackson was out of jail on the original sex offense or any subsequent felony conviction for a total of either 10 or 15 years between 1994 and 2015, when he was charged with this failure to register.  Jackson has never asserted that he ever registered anywhere nor has he denied his failure to register in Louisiana or Texas.  Jackson has not established that his counsel would have discovered by further investigation any reason to have challenged the bill of information on the grounds that he was not required to register or that his time period for registering had elapsed before 2015.

The fact that the sex offender registration laws were amended after Jackson's conviction does not alter their application to him.  Both the state and federal courts have determined that because Louisiana's sex offender registration law is non-punitive in nature, its retroactive application does not violate the Constitution under due process,

---

[25]The provision was amended by: Acts 2006, No. 24, § 1; Acts 2007, No. 460, § 2 (eff. Jan. 1, 2008); Acts 2008, No. 462, § 1 (eff. June 25, 2008); Acts 2008, No. 816, § 1; Acts 2010, No. 149, § 1; Acts 2010, No. 400, § 1; Acts 2011, No. 318, § 1 (eff. June 28, 2011); and Acts 2012, No. 129, § 1 (eff. May 14, 2012).

equal protection or ex post facto considerations.  State ex rel. Olivieri, 779 So.2d at 735;

Moore v. Avoyelles Correctional Center, 253 F.3d 870, 872 (5th Cir. 2001); Criddle v.

Warden, Allen Correctional Center, No. 15-cv-1419, 2015 WL 10381706, *2-*3 (W.D.

La. Oct. 27, 2015), report adopted, 2016 WL 829751 (W.D. La. Feb. 29, 2016) (citing

Smith v. Doe, 538 U.S. 84 (2003)); Huen v. Louisiana, No. 08-1221, 2008 WL 1930523,

*2 & n.4 (E.D. La. Apr. 30, 2008) (Order adopting Report and Recommendation); see

also, Hall v. Attorney General, No. 07-40157, 2008 WL 474121, at *1 (5th Cir. Feb. 20,

2008); Kirschenhunter v. Sheriff's Office, Beauregard Parish, 165 F. App'x 362, 363 (5th

Cir. Feb. 3, 2006), cert. denied, 549 U.S. 913 (2006).

Similarly, based on the non-punitive nature of the registration and notice laws,

courts have held that such laws are not "bills of attainder" as suggested by Jackson.  Bills

of attainder are "legislative acts, no matter what their form, that apply either to named

individuals or to easily ascertainable members of a group in such a way as to inflict

punishment on them without a judicial trial."  United States v. Lovett, 328 U.S. 303, 315

(1946).  However, if ex post facto analysis concludes that a law does not inflict

punishment and serves a valid non-punitive civil regulatory purpose, the law by

definition does not constitute a bill of attainder.  Nixon v. Adm'r of Gen. Servs., 433 U.S.

425, 475-76 (1977) (a statute that imposes no punishment and "further[s] nonpunitive

legislative purposes" is not a bill of attainder); see Brown v. Montoya, 45 F. Supp.3d

1294, 1302 (D.N.M. 2014) (finding that New Mexico's sex offender registration laws

was not punitive under ex post facto considerations and thus was not a bill of attainder);

Britt v. Stewart, No. 12CV20, 2014 WL 546064, at *4 (E.D. Va. Feb. 7, 2014) (same as

to Virginia's sex offender registration laws).

The Louisiana sex offender registration laws have already been found to serve no

punitive function and are not based on a punitive legislation purpose.  State ex rel.

Olivieri, 779 So.2d at 735; Moore, 253 F.3d at 872; Criddle, 2015 WL 10381706, *2-*3.

The sex offender registration laws therefore are not bills of attainder.

For these reasons, Jackson has not established that any further investigation by his

counsel was necessary or would have resulted in a basis to quash the charges.  Counsel

was not ineffective in failing to pursue a motion she likely determined to be futile or

meritless, and which would not have been successful or changed the outcome of the case.

See Johnson v. Cockrell, 306 F.3d 249, 255 (5th Cir. 2002) (counsel is not required to

make futile motions or frivolous objections); Smith v. Puckett, 907 F.2d 581, 585 n.6

(5th Cir. 1990) ("Counsel is not deficient for, and prejudice does not issue from, failure

to raise a legally meritless claim."); Koch v. Puckett, 907 F.2d 524, 530 (5th Cir. 1990)

(concluding that "counsel is not required to make futile motions or objections.").

The state courts' denial of relief on this claim was not contrary to or an

unreasonable application of federal law.  Jackson is not entitled to habeas relief on this

claim.

B.    IDENTITY OF THE ACCUSERS

20

Jackson asserts that his counsel failed to inform him of the identity of his accusers, which violated his confrontation rights. Specifically, Jackson contends that he was entitled to know who accused him of being a danger to the community such that he was required to register. He also asserts that if imposition of the registration requirement on him was a strict legislative mandate, his rights were violated by the "bill of attainder."

For the reasons discussed above, Louisiana's sex offender registration requirements are non-punitive and do not equate to a "bill of attainder." Counsel was not ineffective for failing to argue that the charge or the registration requirement amounted to a bill of attainder.

In addition, the Louisiana sex offender registration laws do not have a component requiring a specific finding that the sex offender is a danger to the community. To prove the charge of failure to register as a sex offender, the State must prove only that the defendant pled guilty or was convicted of a sex offense, that he resided in Louisiana for the period during which he was required to register and that he failed to register within the requisite time allotted for registration. State v. Flores, 167 So.3d 801, 806 (La. 2014). The State was not required to prove that Jackson was a danger to the community. Thus, there was no reason for Jackson's counsel to search out or identify persons who would accuse Jackson of being a danger to the community in connection with the charge he faced.

21

To whatever extent, if any, that Jackson argues he was entitled to know who the State would call at trial on the charge, he has not established that counsel's failure to provide him with a list of potential witnesses was deficient performance or actually impacted his decision to enter the guilty plea.  The Confrontation Clause of the Sixth Amendment provides that in "all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." Crawford v. Washington, 541 U.S. 36 (2004).  The Sixth Amendment safeguards the defendant's right to confront his accusers and to subject their testimony to rigorous testing in an adversary proceeding before the trier of fact.  California v. Green, 399 U.S. 149 (1970).

In Jackson's case, his counsel filed a motion for discovery to obtain witness information and documents, including police reports, other evidence and witness statements.[26]  The State promptly provided Jackson's counsel with the police reports and supplemental reports, including the names of each officer.[27]  Jackson's counsel therefore had the names of the potential witnesses to be called at trial to prepare for cross-examination if the matter had gone to trial.

Jackson does not suggest that he was unaware of the charges against him, nor does he claim that he ever registered at anytime or anywhere when he was supposed to do so. The fact that he personally did not have the list of officers who might testify if he went

---

[26]St. Rec. Vol. 1 of 2, Motion for Discovery, 10/8/15.

[27]St. Rec. Vol. 1 of 2, State's Inventory of Discovery, 10/8/15.

to trial does not mean that he would have been denied the right to question the officers if he chose to go to trial. Instead, he gave up that right when he entered his guilty plea. His self-serving and conclusory argument that he would not have pleaded guilty if he knew who the officers were "fall[s] far short of satisfying Strickland's prejudice element." Sayre v. Anderson, 238 F.3d 631, 635 (5th Cir. 2001) (citing Strickland, 466 U.S. at 694). Thus, the fact that his counsel allegedly did not share the names of potential witnesses with Jackson did not amount to ineffective assistance.

The state courts' denial of relief on this claim was not contrary to or an unreasonable application of Supreme Court precedent. Jackson is not entitled to relief on this issue.

C.    DETAILS OF THE RIGHT TO TRIAL BY JURY

Jackson alleges that his counsel was ineffective because she failed to inform him of the details included in his right to jury trial before advising him to plead guilty. Specifically, he contends that counsel failed to inform him of his right to participate in jury selection or the number of jurors that would be required at trial. He asserts that counsel only informed him that he had a right to a jury trial, but gave him no specific information about what that right included.

Because a guilty plea relinquishes rights of the defendant, "the Constitution insists, among other things, that the defendant enter a guilty plea that is 'voluntary' and that the defendant must make related waivers 'knowing[ly], intelligent[ly], [and] with sufficient

23

awareness of the relevant circumstances and likely consequences.'" <u>United States v.</u> <u>Ruiz</u>, 536 U.S. 622, 629 (2002) (quoting <u>Brady v. United States</u>, 397 U.S. 742, 748 (1970)). Ordinarily, a waiver is entered knowingly, intelligently and with sufficient awareness, when "the defendant fully understands the nature of the right and how it would likely apply in general in the circumstances - even though the defendant may not know the specific detailed consequences of invoking it." <u>Id.</u> at 630. The Supreme Court has held that "[a] defendant, for example, may waive his right to remain silent, his right to a jury trial, or his right to counsel even if the defendant does not know the specific questions the authorities intend to ask, <u>who will likely serve on the jury</u>, or the particular lawyer the State might otherwise provide." <u>Id.</u> at 629-30 (citing <u>Colorado v. Spring</u>, 479 U.S. 564, 573-575 (1987)).

Jackson has identified no legal requirement that his attorney or anyone explain the details of the rights he was waiving, as long as he was placed on general notice of those rights. In <u>Ruiz</u>, the Supreme Court considered the need for a defendant to have been advised of particular information underlying the rights being waived before accepting his guilty plea. The Court held that no such legal authority existed.

> To the contrary, this Court has found that the Constitution, in respect to a defendant's awareness of relevant circumstances, does not require complete knowledge of the relevant circumstances, but permits a court to accept a guilty plea, with its accompanying waiver of various constitutional rights, despite various forms of misapprehension under which a defendant might labor. <u>See</u> <u>Brady v. United States</u>, 397 U.S. [742,] 757 [(1970)] (defendant "misapprehended the quality of the State's case"); <u>ibid.</u> (defendant

misapprehended "the likely penalties"); ibid. (defendant failed to "anticipate" a change in the law regarding relevant "punishments"); McMann v. Richardson, 397 U.S. 759, 770, 90 S. Ct. 1441, 25 L. Ed.2d 763 (1970) (counsel "misjudged the admissibility" of a "confession"); United States v. Broce, 488 U.S. 563, 573, 109 S. Ct. 757, 102 L. Ed.2d 927 (1989) (counsel failed to point out a potential defense); Tollett v. Henderson, 411 U.S. 258, 267, 93 S. Ct. 1602, 36 L. Ed.2d 235 (1973) (counsel failed to find a potential constitutional infirmity in grand jury proceedings).

Ruiz, 536 U.S. at 630-31.

Jackson had not right to be advised of the details of a jury trial when he waived that right. The law did not compel Jackson's counsel or the state trial court to provide him with that information for his plea to have been valid. I further note that Jackson did not question or seek explanation of any of the rights he was waiving during the plea colloquy, although he was given that opportunity.[28]

Jackson has failed to establish any deficiency in his counsel's performance or resulting prejudice. He has not established that the state courts' denial of relief on this claim was contrary or an unreasonable application of Supreme Court precedent. He is not entitled to relief on this claim.

## D-F.   COPY OF THE MULTIPLE BILL, SIGNING OF THE PLEA FORMS AND THREATS

Jackson argues that his counsel was ineffective because she failed to provide him with a copy of or review the multiple offender bill with him before advising him to plead

---

[28]St. Rec. Vol. 2 of 2, Plea Transcript, 10/28/15.

guilty.  He also contends that his counsel committed perjury when she signed the plea forms indicating that she had fully explained his rights to him.  He also claims that when he insisted on receiving more information about the charges, counsel threatened to have the plea deal revoked.  Jackson's assertions are contradicted by the record.

On October 28, 2015, Jackson signed waiver of rights forms in connection with his plea to the underlying charge and the multiple offender bill.[29]  In the opening paragraph of the multiple bill plea form, Jackson initialed the statement that "[a] copy of this [multiple] bill of information has been provided to me and reviewed by me and my attorney."[30]  On each form, Jackson also initialed the sentences identifying the constitutional rights he was waiving by his guilty pleas.[31]

At the plea hearing, Jackson confirmed under oath that he personally signed and initialed both plea forms.[32]  He also stated that he "sure did" go over each of the forms and their contents with his attorney and that he understood the contents of the forms.[33] He acknowledged his understanding and waiver of each of his rights to trial by judge or

---

[29]St. Rec. Vol. 1 of 2, Waiver of Rights-Plea of Guilty, 10/28/15; Waiver of Rights-Plea of Guilty-Multiple Offender, 10/28/15.

[30]St. Rec. Vol. 1 of 2, Waiver of Rights-Plea of Guilty, 10/28/15.

[31]St. Rec. Vol. 1 of 2, Waiver of Rights-Plea of Guilty, 10/28/15; Waiver of Rights-Plea of Guilty-Multiple Offender, 10/28/15.

[32]St. Rec. Vol. 2 of 2, Plea Hearing, p. 2, 10/28/15.

[33]Id. at p. 3.

jury, to remain silent and to subpoena and cross-examine witnesses in connection with his pleas to both.[34]  Jackson also confirmed in court that he was satisfied with the advice he received from his counsel.[35]

Jackson's contrary assertions are not supported by the record.  His "solemn declarations in open court carry a strong presumption of verity," and the "representations of the defendant, his lawyer, and the prosecutor at a [plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings." Blackledge v. Allison, 431 U.S. 63, 73-74 (1977); see also, United States v. Fuller, 769 F.2d 1095, 1099 (5th Cir. 1985) ("Ordinarily a defendant will not be heard to refute his testimony given under oath when pleading guilty") (quoting United States v. Sanderson, 595 F.2d 1021, 1022 (5th Cir.1979)). Documents signed by a defendant at the time of his guilty plea are entitled to "great evidentiary weight." See United States v. Abreo, 30 F.3d 29, 32 (5th Cir.1994). Jackson cannot now deny the sworn statements made by him in a self-serving attempt to challenge the propriety of his plea or his counsel's performance.

The state courts' denial of relief on this claim was neither contrary to nor an unreasonable application of federal law.  Jackson is not entitled to relief on this claim.

---

[34]Id. at pp. 3-8.

[35]Id. at p. 6.

II.    NOTICE OF THE EVIDENCE AGAINST HIM

Jackson asserts that his guilty plea was unconstitutional because the state trial court failed to advise him of the evidence and facts against him before accepting the guilty plea to the multiple offender bill.  Jackson alleges that state law required the state trial court to inform him in open court of the factual allegations contained in the multiple offender bill before accepting his admission of guilt.  Jackson claims that, consequently, he never actually admitted to any evidence against him to support the multiple offender adjudication.

Jackson asserts that the state trial court failed to comply with state law during the multiple bill plea colloquy by failing to identify on the record the evidence in support of the second offender charge.  A federal court, however, does "not sit as [a] 'super' state supreme court in a habeas corpus proceeding to review errors under state law." Wilkerson v. Whitley, 16 F.3d 64, 67 (5th Cir. 1994) (quotation omitted); see also Swarthout v. Cooke, 562 U.S. 216, 219 (2011) (federal habeas review does not lie for errors of state law); accord Molo v. Johnson, 207 F.3d 773, 776 n.9 (5th Cir. 2000); Narvaiz v. Johnson, 134 F.3d 688, 695 (5th Cir. 1998) (citing Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Lewis v. Jeffers, 497 U.S. 764, 780 (1990); West v. Johnson, 92 F.3d 1385, 1404 (5th Cir. 1996)); see also Hogue v. Johnson, 131 F.3d 466, 506 (5th Cir. 1997) (a disagreement as to state law is not cognizable on federal habeas review). "Errors of state law and procedure . . . are not cognizable unless they result in the

28

violation of a federal constitutional right." Lee v. Whitley, No. 93-03791, 1994 WL 395071, at *3 (5th Cir. June 28, 1994) (holding that state judge's purported violation of state law in failing to inform the petitioner of his right against self-incrimination in the habitual offender proceeding was not cognizable in a federal habeas corpus proceeding); see also Payne v. Whitley, 48 F.3d 529, 1995 WL 84049, at *2 (5th Cir. Feb. 6, 1995) (Table, Text in Westlaw); Odom v. Wheat, No. 09-3028, 2009 WL 3199178, at *6 (E.D. La. Sept. 30, 2009) (order adopting report).

In this case, Jackson entered a guilty plea and admitted to the allegations in the multiple offender bill without need for the State to produce any evidence or prove any part of the multiple bill.[36] The United States Fifth Circuit Court of Appeals has held that a state criminal defendant waives a claim of sufficiency of the evidence by pleading guilty or admitting to a multiple bill. Payne, 1995 WL 84049, at *2. The Fifth Circuit recognized that a state court has no federal constitutional duty to establish a factual basis for the guilty plea to a multiple offender bill because the state judge is not determining guilt or innocence, and instead is enhancing a sentence based on a prior conviction which the defendant deems true by admitting to the bill. Payne, 1995 WL 84049, at *2. Jackson cannot now challenge the evidence supporting the multiple bill to which he pleaded guilty.

------

[36] St. Rec. Vol. 1 of 2, Waiver of Rights-Plea of Guilty-Multiple Offender, 10/28/15; St. Rec. Vol. 2 of 2, Plea Transcript, pp. 7-9, 10/28/15.

Jackson has identified no error by the state trial court and no violation of a federal constitutional right during his multiple offender plea proceeding.  Federal habeas relief is available only when an alleged state law error caused "prejudice of constitutional magnitude," such that the error "by itself so infected the entire trial that the resulting conviction violates due process."  Galvan v. Cockrell, 293 F.3d 760, 764-65 (5th Cir. 2002) (citing Cupp v. Naughten, 414 U.S. 141, 147 (1973)); Gilmore v. Taylor, 508 U.S. 333, 342-43 (1993).  Without a demonstrated constitutional error by the state court, Jackson is not entitled to federal habeas review or relief.

To whatever extent Jackson contends that the multiple offender adjudication created some unfairness, such claims under the Due Process Clause present a mixed question of law and fact, Wilkerson v. Cain, 233 F.3d 886, 890 (5th Cir. 2000), which requires this court to determine whether the denial of relief on the claim was contrary to or an unreasonable application of federal law.  I find that it was not.

A state court multiple offender proceeding is not determinative of guilt or innocence, and the accused is not entitled to the full range of due process and other constitutional rights normally attendant to such adjudications.  Buckley v. Butler, 825 F.2d 895, 902-03 (5th Cir. 1987).  Thus, advice about one's constitutional rights has "only a limited application to multiple offender proceedings."  Joseph v. Butler, 838 F.2d 786, 790 (5th Cir. 1988).  As the United States Fifth Circuit has explained:

> [I]n connection with guilty, or "true," pleas under state recidivist statutes, this circuit does not require that the full panoply of rights enunciated in Boykin v. Alabama, 395 U.S. 238, 89 S. Ct. 1709, 23 L. Ed.2d 274 (1969), be extended to the defendant.  See Holloway v. Lynaugh, 838 F.2d 792, 793 (5th Cir.), cert. denied, 488 U.S. 838, 109 S. Ct. 104, 102 L. Ed.2d 80 (1988).  A guilty plea to an enhancement charge is valid if the "'totality of the circumstances' in the record demonstrates that the plea was voluntary and intelligent." Swift v. Lynn, 870 F.2d 1039, 1041 (5th Cir. 1989) (quoting Holloway, 838 F.2d at 793).

Alexander v. Whitley, 940 F.2d 946, 947 (5th Cir.1991); Joseph, 838 F.2d at 789-90;

Swift, 870 F.2d at 1041-42.

The transcript of the multiple offender bill plea proceedings establishes that the state court thoroughly outlined each of the rights and consequences of Jackson's plea to the multiple bill charging him as a second felony offender.  Jackson repeatedly expressed his clear understanding of the proceedings and the consequences.  Jackson indicated at the hearing and on the plea form that he had read and understood the contents of the multiple offender bill.  There is no reason for the state courts on state post-conviction review or this court on habeas review to question the validity of the plea under the foregoing precedent. Ruiz, 536 U.S. at 629.

Jackson has failed to establish that the state court's denial of relief was contrary to or an unreasonable application of federal law.  He is not entitled to relief on this claim.

31

## RECOMMENDATION

For the foregoing reasons, it is **RECOMMENDED** that Perry Jackson's habeas corpus petition under 28 U.S.C. § 2254 be **DENIED** and **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[37]

New Orleans, Louisiana, this _____4th_____ day of February, 2019.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[37]Douglass referred to the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.

32